**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Claude C. Hamby, Jr.,** | ) | **CASE NO. 1:11 CV 542** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| **Ford Motor Company,** | ) | |
| | ) | |
| Defendant. | ) | **Memorandum of Opinion and Order** |
| | ) | |

**Introduction**

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 9). This case arises out of the termination of plaintiff's employment by defendant. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff Claude C. Hamby, Jr. filed his Complaint against defendant Ford Motor Company. This Complaint, alleging two state law claims, was originally filed in the Cuyahoga County Common Pleas Court and removed to this Court on the basis of diversity of citizenship.

1

Plaintiff began working for defendant on September 12, 1994, as a full-time production employee at Ford's stamping plant (the Plant) in Walton Hills, Ohio. He was an hourly employee and part of a bargaining unit represented by the UAW and Local 420. As such, the terms and conditions of plaintiff's employment were governed by the applicable collective bargaining agreement (CBA).

In February 2000, plaintiff was involved in a non-work-related motor vehicle accident. Due to a concussion sustained in this accident, plaintiff was on a long medical leave of absence from the Plant. On October 18, 2001, plaintiff slipped and fell down some steps at the Plant. He was transported to the hospital where a CT scan of his head came back negative. According to plaintiff, he was diagnosed with a laceration on his forehead. Plaintiff returned to work on October 22, 2001, and worked at the Plant without restrictions through November 30, 2001. On December 7, 2001, plaintiff was involved in another non-work-related motor vehicle accident. After this accident, he began experiencing coldness in the fingers of his right hand. When he explained this to the nurses in the Plant's medical department, it was suggested that plaintiff make an appointment to see his then-primary care physician, who placed plaintiff on medical restrictions as a result of the accident. (pltf. depo.)

On December 10, 2001, plaintiff filed an application for hourly disability benefits, which was approved retroactive to his last day worked of November 30, 2001. (*Id.* at 43; Melinda Brayo Decl.). According to the Plant doctor who performed a medical examination on plaintiff on December 7, 2001, plaintiff understood that this medical leave of absence was due to injuries sustained in the December 7, 2001 motor vehicle accident. (Dr. A. Rollins Decl.; Ex.). Plaintiff remained on a personal medical leave of absence through February 15, 2009. (Brayo Decl.)

2

In late 2008 or early 2009, plaintiff was informed by a member of the Plant's labor relations department that his medical leave of absence was scheduled to expire in February 2009 under the terms of the CBA. (pltf. depo.) In particular, Article VIII, Section 30 of the CBA states in relevant part,

> No sick leave shall extend beyond a period of time equal to the employee's seniority at the time he was removed from the active employment rolls of the Company or 18 months, whichever is greater.

According to the Plant's Human Resources Supervisor, Melinda Brayo, under this section, an employee's medical leave of absence may not exceed the length of time during which the employee was on Ford's active rolls prior to the medical leave. Because plaintiff's Plant seniority date was September 12, 1994, and he began a personal medical leave of absence on December 10, 2001, which was approved retroactive to his last day worked of November 30, 2001, his medical leave of absence was scheduled to expire on February 15, 2009.(Brayo decl.)

Plaintiff met with his primary care physician, Dr. Hubbard, on February 6, 2009, at which time the doctor noted that plaintiff's medical condition was "unchanged" and that he was physically able to perform only a sit-down job with many restrictions. (pltf. depo. Ex.)

On February 9, 2009, plaintiff called Dr. Hubbard's office to request paperwork to return to work. He indicated that he had called Unicare (Ford's disability benefits claims processor) and was informed that his medical leave was scheduled to expire on February 15, 2009. (pltf. depo. Ex. at 101-102) According to notes recorded from the nurses's phone consultation, plaintiff stated that his disability leave was ending on that date and he needed to go back to work so he could keep his insurance. (*Id.*)

On February 10, 2009, plaintiff again met with Dr. Hubbard. Although the doctor

addressed her concerns with plaintiff as to whether he could safely perform work at the Plant, she
completed a Medical Certification Form which indicated that plaintiff had been off work due to a chronic head injury, but was able to return to work effective February 15, 2009, subject to medical restrictions of no scaffolding or heights. The doctor also indicated in her notes that it would need to be cleared with the Plant doctor before plaintiff would be allowed to return to work.  (pltf. depo. 108; Ex at 25-26, 100)

On February 12, 2009, plaintiff took the Medical Certification Form to the Plant's medical department and was informed that he could not return to work until cleared to do so by the Plant's physician who was unavailable that day. (pltf. depo. 119-120).  Plaintiff met with the physician, Dr. Otis Hastings, the following day, February 13, 2009.  Dr. Hastings performed a complete medical evaluation of plaintiff.  Due to the results of this examination, and because plaintiff did not present the doctor with any medical documentation showing how his medical condition had improved during his medical leave of absence, the doctor informed plaintiff that he could not return him to work without first consulting with plaintiff's primary care physician. (Hastings decl.)

That same day, plaintiff called Dr. Hubbard's office to schedule an appointment to discuss
the medical information release requested by Dr. Hastings, but no appointments were available. The nurses's phone consultation notes indicate that plaintiff mentioned that he was upset that he was being required to consent to the medical authorization. (pltf. depo. 150; Ex. at 99)

According to Melinda Brayo, the Medical Information Release Authorization form was

4

received by fax from plaintiff to Dr. Hubbard's office on February 17, 2009, as evidenced by the stamp thereon marked "Received Time Feb. 17th 2:05pm." (Brayo decl.; Ex.3) According to Denise Supanich, the Plant's nurse, the Plant's medical department received the signed release by fax on February 17, 2009. (Supanich decl.; Ex.) Plaintiff does not dispute this evidence.

Because plaintiff did not make an effective return to work by February 15, 2009, his medical leave of absence expired under the terms of the CBA. By operation of the applicable section, plaintiff lost his seniority and was ineligible to return to work which directly resulted in his discharge effective February 16, 2009. (Brayo decl.)

The Union filed a grievance on March 5, 2009, challenging plaintiff's discharge. On May 20, 2009, plaintiff's grievance was denied at the second stage of the CBA's grievance-arbitration process and it is currently at the third stage awaiting further action by the Union. The grievance has not been settled, and no final disposition has been reached. (Brayo decl.)[1]

Plaintiff filed this Complaint setting forth two claims. Count One alleges intentional infliction of emotional distress. Count Two alleges handicap discrimination under Ohio Revised Code § 4112.

This matter is now before the Court on defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376,

---

[1] Plaintiff also sought workers compensation benefits but they were disallowed. (pltf. depo.; Ex)

378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a

scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

### **Discussion**

Defendant argues that summary judgment is warranted because plaintiff's disability discrimination claim is preempted by Section 301 of the Labor Management Relations Act (LMRA) and plaintiff failed to exhaust his contractual remedies. Additionally, defendant maintains that plaintiff's intentional infliction of emotional distress claim fails on the merits. For the following reasons, the Court finds summary judgment to be appropriate.

Count One alleges that plaintiff's wrongful discharge resulted in the intentional infliction of emotional distress.

Under Ohio law, a plaintiff claiming intentional infliction of emotional distress must show the following: (1) the defendant intended to cause plaintiff's emotional distress or should have known that such serious emotional distress would result, (2) the defendant's conduct was outrageous, extreme, beyond all possible bounds of decency, and utterly intolerable in a civilized community, (3) the defendant's conduct proximately caused the plaintiff's psychic injury, and (4) the plaintiff's emotional distress was so serious that no reasonable person could be expected to endure it. *Valente v. University of* Dayton, 2011 WL 3156309 (6th Cir. July 27, 2011) (citing *Talley v. Family Dollar Stores of Ohio, Inc*., 542 F.3d 1099, 1110 (6th Cir.2008).

Defendant asserts that plaintiff has failed to allege any facts, or provide any evidence,

showing that defendant engaged in behavior that could rise to the level of extreme and outrageous conduct. This Court agrees. Plaintiff's responsive argument consists of one sentence with no supporting evidence: "In the instant case, Defendant's actions/inaction preventing Plaintiff from returning to work before his medical leave expired and subsequent discharge of Plaintiff constitutes the type of severe and outrageous conduct enunciated in [Ohio case law.]" (Doc. 12 at 6) This does not suffice to defeat summary judgment.

Not only does the Complaint fail to substantiate this claim, but plaintiff does not provide any evidence demonstrating that defendant intended to cause serious emotional distress or that defendant's conduct was outrageous and intolerable. Moreover, plaintiff has presented no evidence that defendant caused him to suffer any psychic injury or serious emotional distress. In fact, plaintiff testified at deposition that he has not sought treatment of any kind for any emotional distress since his separation from Ford, and has not suffered any severe or debilitating emotional distress as a result of his separation from Ford.

For these reasons, summary judgment is granted as to Count One.

Count Two alleges handicap discrimination under the Ohio Revised Code.[2] That statute prohibits employment discrimination based on a disability. Defendant maintains that this claim is preempted by Section 301 of the LMRA. For the following reasons, this Court agrees.

As discussed above, the terms and conditions of plaintiff's employment were governed by the applicable CBA. Plaintiff's allegation that he was improperly discharged under the

---

[2] Although plaintiff's brief states that plaintiff was also discriminated against based on his age, plaintiff did not allege age discrimination in his Complaint. Nonetheless, plaintiff presents no argument in his brief regarding any age discrimination claim. Therefore, the Court will not address this assertion.

medical leave of absence provision of the CBA is preempted by Section 301 of the LMRA. *See CNH America LLC v. International Union,* 645 F.3d 785 (6th Cir. 2011) (citations omitted) (Section 301 "preempts state law claims that 'substantially depend upon' the meaning of a CBA.")

Plaintiff's disability claim depends upon an analysis of Article VIII, Section 30 of the CBA, set forth above, because plaintiff contends that this section should not have been applied to him given that he had attempted to return to work prior to the expiration of his medical leave. (pltf. depo. 172). Plaintiff argues that his claim is not preempted because he agrees that his medical leave was going to expire in February 2009 under the CBA and, therefore, no interpretation of the CBA is needed. But, plaintiff's claim depends on his assertion that he was improperly discharged under the CBA's medical leave of absence provision. Moreover, he even filed a grievance under the CBA challenging his termination.

Analyzing this claim under Section 301, it fails as a matter of law because plaintiff did not exhaust his contractual remedies. *See Wilson v. The International Brotherhood of Teamsters, Chauffeurs, Warehousemen, Helpers of America,* 83 F.3d 747 (6th Cir. 1996) (Plaintiff "must exhaust contractual grievance remedies before seeking relief in federal court.") As discussed above, plaintiff's grievance remains unsettled. Plaintiff does not contest this issue.

Even assuming plaintiff had exhausted his remedies, the claim fails on the merits because defendant did not breach the CBA for the unopposed reasons stated by defendant.

Moreover, the Court agrees that the disability discrimination claim would fail on the merits even if it were not preempted. Discrimination claims brought pursuant to Ohio law are subject to the same analysis as those brought pursuant to the Americans with Disabilities Act.

9

*Jakubowski v. Christ Hosp., Inc.,* 627 F.3d 195 (6th Cir. 2010) To establish a prima facie case, an employee must show that he is disabled; he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and he was discharged solely by reason of his disability. *Id.*

Plaintiff fails to establish a prima facie case. A disability is defined as a physical or mental impairment that substantially limits one or more of the major life activities of plaintiff. *Spees v. James Marine, Inc.,* 617 F.3d 380 (6th Cir. 2010) Plaintiff asserts that he is disabled because he "was severely restricted from both work and driving an automobile." (Doc. 12 at 4) However, "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Watts v. United Parcel Service,* 378 F.Appx. 520 (6th Cir. 2010) Plaintiff makes no such allegation and presents no evidence. Additionally, courts have not found driving a car to be a major life activity. *See Chenoweth v. Hillsborough County,* 250 F.3d 1328 (11th Cir. 2001) Therefore, plaintiff has not shown that he is disabled.

Nor has plaintiff demonstrated that he was discharged because of his disability. Plaintiff testified at deposition that he believed defendant terminated him based on his disability because during the medical examination on February 13, 2009, Dr. Hastings asked plaintiff what would happen if he returned to work and got sick again. (pltf. depo. 174, 177) Plaintiff's subjective interpretation of the doctor's comments is insufficient to show that defendant terminated him based on a disability. Moreover, plaintiff argues that this prong of the prima facie case is met because he was discharged and "other similarly situated employees outside plaintiff's class were retained and/or received more favorable treatment." (Doc. 12 at 5) However, plaintiff presents

10

no evidence, or discussion, as to how other employees were treated.  Finally, as defendant points out, Ford was aware of plaintiff's physical impairments since 2001, yet did not take any allegedly discriminatory action until 2009.  This would tend to show a lack of discriminatory intent.

For these reasons, Count Two is preempted by federal law and, alternatively, fails on the merits.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.


    /s/ Patricia A. Gaughan  
PATRICIA A. GAUGHAN  
United States District Judge

Dated: 12/14/11